
USDC- BALTIMORE
'22 JUL 19 PM 12:18

## ATTACHMENT A – FELA AINA FACTUAL STIPULATION

*The undersigned parties stipulate and agree that if this case had proceeded to trial, the Department would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant Fela Aina ("Defendant" or "Aina") was born in Nigeria, and moved to the United States in or about 2010. From in or about 2010 to in or about 2019, Aina lived in Albany, Georgia. From in or about January 2019 to in or about February 2022, Aina lived in Baltimore County, Maryland.

Financial Institutions

SunTrust Bank ("SunTrust"), JPMorgan Chase Bank ("JP Morgan"), Bank of America ("Bank of America"), Farmers and Merchant Bank ("FMB"), Pentagon Federal Credit Union ("PenFed"), and Wells Fargo Bank NA ("Wells Fargo") were financial institutions as defined in 18 U.S.C. § 20. These entities are collectively referred to as the "Financial Institutions." The Financial Institutions maintained records concerning financial transactions they processed, including but not limited to records about the individuals owning or controlling accounts with the Financial Institutions, and in some instances, surveillance video and/or images, and information about the information submitted to open an account.

The Money Laundering Conspiracy

Beginning in or around January 2019, and continuing until in or around February 2022, Aina entered into an illegal agreement with Person A and others to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce involving the proceeds of a specified unlawful activity, namely, wire fraud, a violation of 18 U.S.C. § 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

Aina admits that his conspiracy offense involved (i) laundered funds in the amount of at least $550,000, and (ii) sophisticated laundering. This conspiracy offense included the use of (i) a shell company, Pinnacle Height Construction LLC, which Aina created on or about April 4, 2019 to open bank accounts and conceal his receipt and transfer of fraud proceeds and (ii) an alias identity, Samson Adeyemi, including purported date of birth, social security number, and driver's license. The shell company and alias assisted the conspiracy by allowing Aina to receive and transfer fraud proceeds while hiding Aina's identity and that of his co-conspirators.

In or about April 2019, Aina created the business entity Pinnacle Height Construction Limited Liability Company, and listed Samson Adeyemi as the resident agent. In or about January 2020, while working in concert with Person A, Aina opened a bank account at SunTrust in the name Pinnacle Height Construction LLC, with Samson Adeyemi as the only signatory on

the account. The SunTrust account number ended in 1118 (hereinafter "ST 1118"). When opening ST 1118, Aina presented a fake and fictitious Virginia driver's license in Adeyemi's name, but bearing Aina's picture. Person A had obtained the Virginia driver's license and provided it to Aina to use when opening ST 1118. During the approximate time period January 2020 to March 2021, Aina and Person A used ST 1118 to receive and transfer more than $800,000 of fraud proceeds.

On numerous instances during this time period, Aina received or deposited funds into ST 1118 that Aina knew represented the proceeds of unlawful activity, and that were, in fact, the proceeds of wire fraud. In some instances, Aina conducted financial transactions by depositing cashier's checks or cash into the accounts at bank branches. In other instances, funds were wired or electronically transferred into the account. The proceeds were derived from various fraud schemes, including wire frauds in which victims received fraudulent emails from look-a-like email accounts that falsely provided wire instructions to transfer money into co-conspirator bank accounts, or emails from genuine accounts that had been taken over by co-conspirators through illegal computer intrusions. In other cases, victims were contacted online and lured through romance and similar scams into sending money to the bank accounts of purported romantic partners, individuals in financial distress, or others.

After receiving and depositing the proceeds of the fraud schemes into the ST 1118 account, Aina conducted and facilitated the conduct by others of additional financial transactions involving the proceeds, including by making cash withdrawals; purchasing money orders and cashier's checks; and transferring proceeds by wire, electronic transfer, and check to other accounts at financial institutions. Aina admits that the financial transactions that he and others conducted involving fraud proceeds, whether deposits into or withdrawals or transfers out of the ST 1118 account, were designed to conceal or disguise the nature, location, source, ownership, and control of the proceeds. Aina further admits that some of these financial transactions involved criminally-derived property in excess of $10,000.

Specific Transactions

Among the financial transactions Aina conducted was the deposit in Baltimore County, Maryland, on or about March 23, 2020, into ST 1118 of a cashier's check in the amount of $80,000 made payable to Pinnacle Heights [sic] Construction LLC. The cashier's check represented proceeds from a business email compromise scheme in which Victim #1 was fraudulently convinced to wire $265,625 to a Bank of America account. Aina agrees that he deposited the $80,000 cashier's check knowing that it represented the proceeds of a specified unlawful activity. After Aina deposited the fraud proceeds, Aina engaged in multiple financial transactions in ST 1118, in coordination with Person A, to gain access to the funds, including approximately $33,000 in ATM and over the counter cash withdrawals, as well as the purchase of a $48,000 cashier's check.

On or about March 9, 2021, Aina deposited a cashier's check in the amount of $32,000 made payable to Pinnacle Height Construction LLC into ST 1118. The $32,000 cashier's check was purchased with funds from a JPM account ending in 3673 ("JPM 3673"). The source of funds for the $32,000 cashier's check was a fraud in which funds were improperly removed from

Victim #2's account at PenFed, after an individual used Victim #2's password to gain access to the account and wire a total of $100,000 to JPM 3673. Aina agrees that he deposited the $32,000 cashier's check knowing that it represented the proceeds of a specified unlawful activity. After Aina deposited the fraud proceeds, Aina engaged in multiple financial transactions in ST 1118, in coordination with Person A, to gain access to the funds, including cash withdrawals and the purchase of a $24,000 cashier's check.

In or about May 2021, Aina opened an account at FMB ending in 1642 ("FMB 1642"). On or about June 2, 2021, a $52,00 cashier's check was deposited into FMB 1642, but later frozen after a stop payment was issued on the check. The $52,000 originated from Victim #2's account at PenFed.

Georgia Relevant Conduct

In or about 2020, Victim #3 met a person online who used an alias, Clive Simpson, and the image of a well-known Australian, Timothy Robarbs. "Simpson" told Victim #3 that he had worked for Exxon Mobil as a petroleum geologist for the last 20 years. He stated that he had been married to an Australian woman named Anna, who had died three years ago of cancer. On or about April 3, 2020, "Simpson" fraudulently convinced Victim #3 to wire $12,000 to a Wells Fargo account ending in 3622 ("WF 3622"), falsely representing to Victim #3 that the money would be used for his father's surgery in Sweden. According to Victim #3, she spoke with "Simpson" on the phone multiple times and, on some of the occasions, "Simpson" used Aina's cell phone with the last four digits 2869 when talking with Victim #3.

Beginning in or about 2018, and continuing for approximately 18 months, Victim #4 met a person using the name "Melissa McCloud" in an online dating website. While developing an online relationship with "McCloud," "McCloud" asked Victim #4 to direct money on multiple occasions to accounts, including at least one account that was registered to Aina. "McCloud" claimed the money was to help McCloud, who had travelled to Ireland to resolve a family business in Ireland following the death of McCloud's parents. Over the course of a year and a half, Victim #4 sent more than $30,000 to multiple accounts at the direction of McCloud. A portion of this money flowed into WF 3622, which was controlled by Aina. Aina knowingly received the funds, with the knowledge and intent that they represented the proceeds of a fraud.

The defendant specifically admits that the transactions involving Victims #3 and #4 are relevant conduct for purposes of this case, and specifically admits that restitution should be ordered for their losses.

I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I understand it, and I voluntarily agree to it. I am completely satisfied with the representation of my attorney.

04/16/2022
Date

Fela Aina